UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICKEY FORET                                    CIVIL ACTION

VERSUS                                          NUMBER: 09-4567

TRANSOCEAN OFFSHORE (USA), INC.                 SECTION: "B"(3)

## ORDER AND REASONS

Plaintiff Rickey Foret's ("Foret") Motion for Partial Summary Judgment with respect to Defendant's plea for protection under the Limitation of Liability Act.  (Rec. Doc. No. 40) is **GRANTED**. Defendant Transocean Offshore, Inc ("Transocean") filed a Memorandum in Opposition.  (Rec. Doc. No. 42).  Plaintiff replied to Defendant's opposition memorandum (Rec. Doc. No. 47), and both parties subsequently filed supplemental memorandum.  (Rec. Docs. No. 51, 52).

Facts of the Case:

On June 16, 2009, Foret sustained severe injuries while performing repair work on a lifeboat owned by Transocean.  (Rec. Docs. No. 1; 40-1 at 1.)  At that time, Foret was employed by Alexander-Ryan Safety Systems, which Transocean contracted to repair defects to the lifeboats aboard Transocean's drill ship, the "Discoverer Clear Leader" ("DCL").  *Id.*

When injured, Foret was repairing Lifeboat No. 4, which is registered as part of the equipment and inventory of the DCL and shares its official call sign.  (Rec. Doc. 40-6 at 2-4; Rec. Doc.

No. 40-8 at 2).  According to the DCL's Offshore Installation Manager ("OIM"), John Redington, regulations set forth by the US Coast Guard require Transocean to maintain its lifeboats onboard the DCL during all drilling operations, and also when transporting between locations.  *Id.* at 2.  Likewise, agreements between Transocean and third party oil companies to lease the DCL necessitate the inclusion of the DCL's lifeboats.  *Id.* at 3-6.

Purpose-wise, Transocean maintains its lifeboats for emergency evacuations only.  *Id.* at 7; (Rec. Doc. No. 40-7 at 2).  More specifically, DCL lifeboats serve no additional transportation purpose:  they are not employed to transport crew members or equipment from one location to another, nor are they leased, chartered, or rented independent of the DCL.  (Rec. Doc. No. 40-6 at 6-7).  Absent an emergency evacuation, Transocean lifeboats remains attached to the DCL's davits; they serve no purpose beyond their connection to the drill ship.  (Rec. Doc. No. 52 at 9).

In the event of an emergency, however, each lifeboat is operated by a control panel inside the boat, which includes a helm, throttle and release mechanism.  (Rec. Doc. No. 42-3 at 5-11).  When activated, the release mechanism allows the lifeboat to disengage from the DCL cables and drop into the water.  *Id.* at 5-6.  Among the officers and employees stationed onboard the DCL, Transocean designates several coxswain, who, in an emergency, are authorized to drive the lifeboats following an evacuation.  *Id.* at

2-3.  Transocean does not hire or maintain a separate crew for these lifeboats; the designated coxswain are all employees whose primary responsibilities stem from jobs onboard the DCL.  (Rec. Doc. No. 40-1 at 8-9).

On the afternoon of June 16, Foret and three other employees first completed repairs to the exterior of Lifeboat No. 4, then boarded the lifeboat to repair the interior.  *Id.*  During this time, Lifeboat No. 4 remained suspended on the DCL's davits.  *Id.* When the repairs were finished, the decision was made to lower the lifeboat back into the water so that it could be reversed and stowed normally.  *Id.* 2. Approximately 16 feet above the water, the lifeboat unexpectedly stopped its descent.  (Rec. Doc. No. 42 at 3.)  Unaware that the lifeboat had not yet entered the water, Transocean's designated coxswain, Robert Laws, activated the release from within the boat, causing it to fall the remaining distance to the water.  *Id.*  Upon impact, Foret allegedly suffered disabling injuries to his spine, head and right knee.  (Rec. Doc. No. 1 at 2).

On July 29,2009, Foret filed suit against Transocean.  *Id.* at 1.  Foret alleges the negligence of Transocean and members of its crew, and seeks to recover damages for lost income and severe pain and suffering.  *Id.* at 3.  Transocean originally answered on November 11, 2009, denying Foret's allegations; a week later it filed an amended answer on November 18, 2009, asserting a defense

pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.* (Rec. Doc. No. 37 at 2). Specifically, Transocean claims that, according to the Limitation of Liability Act, its recovery must be limited to the value of Lifeboat No. 4; subsequently the value of DCL or its other five lifeboats should not be tendered. *Id.*

On May 6, 2011, Foret filed the instant motion for partial summary judgment. (Rec. Doc. No. 40 at 1). Foret's seeks summary judgment, specifically, with regards to Transocean's defense under the Limitation of Liability Act. *Id.*

Contentions of Movant:

Foret seeks relief under Federal Rule of Civil Procedure 56 (c), arguing that an application of the "flotilla doctrine" bars Transocean's claimed defense under the Limitation of Liability Act. (Rec. Doc. No. 40-1 at 3.) According to Foret, because the flotilla doctrine requires a limitation fund to include the value of all vessels in a flotilla, Transocean's proposed limitation amount– which tenders only the value of Lifeboat No. 4 – is insufficient. *Id.* Instead, Foret contends that the limitation fund must include the value of DCL and the five other lifeboats. *Id.* Foret alleges that summary judgment is proper because Transocean fails to raise any genuine issue of material fact with respect to the flotilla doctrine's applicability. *Id.*

According to Foret, the relationship between the DCL and

-4-

Lifeboat No. 4 satisfies the three required elements of the flotilla doctrine: the vessels share a common ownership, were engaged in a common enterprise, and were operated under a single command at the time of the accident. *See Id*. at 4,8; (Rec. Doc. No. 47 at 9-10). Specifically, because Transocean classifies Lifeboat No. 4 as a piece of DCL equipment, Foret argues that this fact is dispositive of both common venture and single command. *See Id*. Particularly with regard to the "single command" requirement, Foret asserts that Transocean's OIM, John Redington effectively controlled both DCL and Lifeboat No. 4. (Rec. Doc. No. 47 at 9).

Foret also defends the propriety of summary adjudication in this case. *Id*. at 3-6. Specifically, Foret disputes Transocean's claim that the amount of a limitation fund must be decided at a trial; Foret argues that its motion for summary judgment does not try to establish the amount of the limitation fund, but rather seeks to dismiss Transocean's claim that recovery is limited to the value of Lifeboat No. 4. *Id*. at 3-4.

Furthermore, Foret alleges that summary judgment is, in fact, appropriate, even in light of the 1991 Advisory Committee Note to Federal Rule of Civil 56 (a), which observes that summary judgment may be improper unless it has "some significant impact on discovery, trial, or settlement." (*See* Rec. Doc. No. 47 at 4); (Rec. Docs. No. 42 at 4; 51 at 6.) According to Foret, summary judgment on this issue directly impacts his need for discovery

later in the case; specifically, were the amount of the limitation fund to be confined to the value of Lifeboat No. 4, Foret would need to prove Transocean's privity and knowledge in order to be able to recover on his negligence claim. (Rec. Doc. No. 47 at 6).

Contentions of Non-Movant:

Transocean contends that summary judgment is inappropriate in this case for two main reasons. (*See* Rec. Doc. No. 42). First, Transocean argues that the determination of a limitation fund is not a proper subject for summary judgment. *Id.* at 4. In the alternative, Transocean claims that, even if a court could properly adjudicate the amount of an existing limitation fund on summary judgment, Transocean has yet to create the fund in question – as a result, the value of the limitation fund remains an issue best resolved at trial. *Id.* at 5.

In addition to its assertion that summary judgment is procedurally improper, Transocean argues that a genuine issue of material facts exists regarding the flotilla doctrine's applicability, particularly in terms of whether DCL and Lifeboat No. 4 operated under a single command. (Rec. Doc. No. 51 at 5-6). According to Transocean, the single command requirement necessitates control over the actual movements of the boat. *Id.* at 5. Because Foret has not demonstrated that either Redington or another employee actually steered, or otherwise directly controlled the movements of both DCL and Lifeboat No. 4, a disputed issue of

fact exists as to whether anyone exercised a single command over both vessels at the time of the accident. *Id.* at 6. Consequently, Transocean urges the Court to deny summary judgment and reserve the determination of the flotilla doctrine's applicability for a later point in litigation. *Id.*

Law and Analysis:

### I. Standard of Review for a Motion for Summary Judgment pursuant to Federal Rules of Procedure 56 (c).

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory

rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**II.  Limitation of Liability**

The Limitation of Liability Act permits a ship-owner, lacking in privity or knowledge, to limit liability for damages arising from a maritime accident to the value of the vessel involved in the accident. *ODECO II, Odeco Oil and Gas v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996). Specifically, the Act provides:

> the liability of the owner of any vessel…for any loss, damage or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned or incurred, without the privity or knowledge of such owner or owners shall not…exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C. App. § 183(a).

A ship-owner can assert the right to limitation of liability in two ways: (1) by filing a pre-emptive petition for limitation of liability pursuant to 46 U.S.C. app. § 185, or (2) by pleading limitation of liability as a defense in the answer to an existing complaint pursuant to 46 U.S.C. app. § 183. *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164 (5th Cir. 1981); *Karim v. Finch Shipping Co.*, 265 F.3d 258, 263 (5th Cir. 2001). Although § 185 requires the ship-owner to post security in the amount of the vessel's value, courts in the Eastern District of Louisiana have repeatedly concluded that a ship-owner is not required to post

-8-

security in the amount of the limitation fund when the ship-owner instead pleads limitation of liability as a defense under § 183. *Louisiana DOTD v. Kition Shipping Co., Ltd.*, 653 F.Supp.2d 633, 645-46 (M.D. La. 2009) (*citing May v. Falcon Drilling Co., Inc.*, 1995 WL 569210 (E.D.La. 1995); *El Paso Production GOM, Inc. v. Smith*, 406 F.Supp.2d 671 (E.D.La. 2005).

Section 183 notwithstanding, the "flotilla doctrine" provides one way to challenge a ship-owner's claim of a limitation of liability defense. *See Cenac Towing Co., Inc. v. Terra Resources Inc.*, 734 F.2d 251, 254 (5th Cir. 1984). Specifically, the flotilla doctrine requires a limitation fund to include the value of all vessels in a flotilla, where the vessels are: 1) owned by the same person, 2) engaged in a common enterprise and, 3) under a single command. *Id.*

With respect to the "single command" requirement, courts within the Fifth Circuit have observed that "command" is not limited to on-board direction. *The Matter of Offshore Specialty*, 2002 WL 82798 (E.D. La. 2002); *The Matter of Falcon Workover Co., Inc.*, 1998 WL 760397 (E.D. La. 1999). Rather, a court may go "over the head of the captain of an individual boat" in order to establish single command among "common management personnel". *The Matter of Offshore Specialty*, 2002 WL 82798.

Procedurally, courts in the Fifth Circuit have permitted plaintiffs to invoke the flotilla doctrine in a variety of ways.

*See The Matter of Archer Daniels Midland*, 1995 WL 600892; *Tom-Mac v. Biela*, 76 F.3d 678, 684 (5th Cir. 1996); *The Matter of Falcon Workover Co., Inc.*, 1998 WL 760397; *Matter of A. & J. Towing, Inc.*, 1997 WL 289396 (E.D. La 1997).  Where a limitation fund already exists, Rule F(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims permits plaintiffs to file a Motion to Increase the Limitation Fund, when the amount tendered is less than the value of the vessel. *The Matter of Archer Daniels Midland*, 1995 WL 600892; *The Matter of Falcon Workover Co., Inc.*, 1998 WL 760397. Although less common, at least one court in this district has also concluded that summary judgment – in addition to a Rule F(7) motion to increase a limitation fund – is a proper tool for invoking the flotilla doctrine for limitation purposes. *See Matter of A. & J. Towing, Inc.*, 1997 WL 289396 (E.D. La 1997)., *See Id.*

The Court must thus determine two issues at this stage: 1) whether the matter presents a valid subject for summary judgment and 2) whether a genuine issue of material fact exists respecting the flotilla doctrine.

### A. Summary Judgment of a § 183 Limitation of Liability Defense

Foret's motion for summary judgment is proper because the applicability of the flotilla doctrine may, in fact, be determined by summary adjudication. *See Matter of A. & J. Towing, Inc.*, 1997 WL 289396.  As a result, Transocean's § 183 defense may be dismissed on partial summary judgment if the flotilla doctrine

renders the proposed limitation amount erroneous. *See Id.* Moreover, summary judgment is also proper because the determination of the limitation fund bears significantly upon subsequent discovery and settlement in this case. (*See* Rec. Doc. No. 47 at 5-6).

Courts in the Fifth Circuit consider challenges to a ship-owner's invocation of the Limitation of Liability Act through more than one type of procedural mechanism. *See Matter of A. & J. Towing, Inc.*, 1997 WL 289396; *See also The Matter of Archer Daniels Midland*, 1995 WL 600892; *Tom-Mac v. Biela*, 76 F.3d 678, 684 (5th Cir. 1996); *The Matter of Falcon Workover Co., Inc.*, 1998 WL 760397; *Guey v. Gulf Insurance Co.*, 46 F.3d 478, 480-82 (5th Cir. 1996). Where a ship-owner pleads a limitation of liability defense under § 183, courts may entertain a plaintiff's challenge to that defense via either a Motion to Increase a Limitation Fund pursuant to Rule F(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims, or a motion for summary judgment. *See The Matter of Archer Daniels Midland*, 1995 WL 600892; *see also Matter of A. & J. Towing, Inc.*, 1997 WL 289396.

A Rule F(7) Motion is appropriate when a limitation fund has been created, and a ship-owner has already surrendered a particular amount to the court. *In re Marquette Transp. Co., LLC*, 2011 WL 1486119 (E.D.La. 2011). Rule F(7) states : "any claimant may by motion demand that the funds deposited in court or the security

given by the plaintiff be increased on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight." *Id.* Thus, plaintiffs most frequently raise F(7) motions with respect to a § 185 petition, which requires a shipowner to post security equal to the amount of the vessel's value. *See Louisiana DOTD*, 653 F.Supp.2d at 645-46; (*for other examples of courts adjudicating Rule F(7) motions see also: In Matter of Greenhill Petroleum Corp.*, 1997 WL 567956 (E.D. La. 1997); *In Matter of Offshore Specialty Fabricators, Inc.*, 2002 WL 827398 (E.D. La 2002)). However, a ship-owner that asserts a limitation of liability defense under § 183 is not required to post security in the amount of the vessel's value. *Falcon Drilling Co.*, 1995 WL 569210. Thus, an F(7) motion to increase the funds deposited in the court may not always be the proper means of challenging a shipowner's limitation to liability defense, where a ship-owner has not actually surrendered the alleged value of the vessel to the court. *See Id.*

In light of an F(7) motion's limited applicability, more than one court has at least tacitly acknowledged summary judgment's legitimate role in determining a ship-owner's right to limit liability. *See Tom-Mac*, 76 F.3d at 682, 685; *see also Matter of A. & J. Towing, Inc.*, 1997 WL 289396. In *Tom-Mac*, the Fifth Circuit reviewed a district court's grant of summary judgment on a shipowner's claim to limit liability. *Tom-Mac*, 76 F.3d at 682.

Although the court ultimately reversed the lower court's decision, it did so because the ship-owner's petition was untimely. *Tom-Mac*, 76 F.3d at 685. The court did not, however, dispute that summary judgment could decide either the limitation of liability issue or the applicability of the flotilla doctrine. *See Id.* at 682, 684. Similarly, in *Matter of A. & J. Towing*, a court in this district entertained a motion for summary judgment as an appropriate means of determining, on the merits, whether the flotilla doctrine applied for limitation purposes. *Matter of A. & J. Towing, Inc.*, 1997 WL 289396.

Here, Foret's motion for partial summary judgment is likewise appropriate for the disposition of Transocean's limitation of liability defense. As Transocean itself notes, because Transocean raised a limitation of liability claim as a § 183 defense rather than a § 185 petition, a limitation fund does not yet actually exist, nor has Transocean posted any security to the court. (Rec. Doc. No. 42 at 5). Thus, a motion to increase the limitation fund under Rule F(7) would indeed be premature, since the fund in question does not exist. *See Id.* However, as Foret rightly argues, its motion for summary judgment does not attempt to increase an existing deposit, but rather seeks to invoke the flotilla doctrine in order to dismiss Transocean's pleaded defense that its liability is limited to the value of Lifeboat No. 4. (Rec. Doc. No. 47 at 3.) Because Federal Rule of Procedure 56(a)

-13-

establishes that partial summary judgment may be rendered with respect to "part of each claim or defense", summary judgment remains, in this case, the preferable vehicle for adjudicating Foret's opposition to Transocean's defense – at least in the absence of an existing limitation fund. Fed. R. Civ. P. 56(a). This conclusion is bolstered by the decisions of the courts in *Tom-Mac* and *Matter of A. & J. Towing, Inc*, which did not refute the propriety of summary judgment in this context. *See Tom-Mac*, 76 F.3d at 682, 685; *Matter of A. & J. Towing, Inc.*, 1997 WL 289396. Thus, Transocean's argument that an objection to a §183 defense can only be raised as a Rule F(7) motion is unavailing.

Moreover, Transocean's contention that the court cannot dismiss a § 183 defense by motion for summary judgment lacks a sound jurisprudential basis. Specifically, Transocean cites the Supreme Court decision in *Black Diamond SS Corp. v. Robert T. Stewart & Sons* as well as the Fifth Circuit decision in *Guey v. Gulf Insurance Co.* to support its proposition that an insufficient limitation fund does not provide an adequate basis for striking a ship-owner's limitation of liability defense. (Rec. Doc. No. 42 at 5). In fact, this argument fundamentally misconstrues both the substantive conclusions set forth by these cases, and their relevance for the instant motion.

First, the cases in *Black Diamond* and *Guey* concerned a ship-owner petition to limit liability under § 185, which as noted,

-14-

requires ship-owners to post security to the court in the amount of the vessel's value. *Black Diamond SS Corp v. Robert T. Stewart & Sons*, 336 U.S. 386, 395 (1949); *Guey v. Gulf Insurance Co.*, 46 F.3d 478, 480-82 (5th Cir. 1996). *Black Diamond* and *Guey* both confronted the issues directly pursuant to § 185's required posting of security – *Black Diamond* addressed whether a ship-owner was entitled to a concursus in light of an inadequately posted bond, while *Guey* grappled with the required time-frame for posting the security. *Id.* As a result, neither *Black Diamond* nor *Guey* hold meaningful precedential value in the instant matter. Because the present suit involves a limitation of liability defense pursuant to § 183, it lacks the procedural requirement of a § 185 petition which formed the crux of the disputed issue in both of the aforementioned cases. *See Id.*

Furthermore, their procedural distinctions notwithstanding, neither *Black Diamond* nor *Guey* actually stand for the conclusion suggested by Transocean, namely, that the court lacks the jurisdictional basis to dismiss a limitation defense based on the proposed amount of the fund. *See Id.* In the end, *Black Diamond* concluded only that an inadequate, existing bond was not a jurisdictional defect under § 185, while the court in *Guey* stressed its decision should be read narrowly, noting that, "we only hold that under section 185 the simultaneous posting of security with the petition – or the posting of security within six months – is

not a jurisdictional requirement." *Black Diamond SS Corp*, 336 U.S. 395; *Guey*, 46 F.3d at 482.    Thus the cases cited by Transocean dealt exclusively with the mechanisms involved in posting a bond under a § 185 petition to limit liability – neither preclude a summary judgment dismissal of a § 183 defense.

Transocean again cites authority erroneously with respect to its claim that a determination of the value of a limitation fund should be resolved at trial.  (Rec. Doc. No. 42 at 5)(*citing The Matter of Archer Daniels Midland*, 1995 WL 600892).  Specifically, the court in *The Matter of Archer Daniels Midland* determined that, because a disputed issue of fact existed with respect to the flotilla doctrine's applicability, the limitation fund was an issue best decided at trial in the context of that particular proceeding. *Id*.  The court did not, however, hold categorically that the value of a limitation fund should be resolved at trial.  *See Id*.

Finally, summary judgment on this issue would significantly impact subsequent discovery, trial and settlement, and is therefore proper at this stage of litigation.  Transocean's argument to the contrary is unpersuasive.  (*See* Rec. Doc. No. 42 at 4). Specifically, if Transocean is entitled to limit its recovery to the value of Lifeboat No. 4, Foret cannot recover for damages that exceed that amount.  *See ODECO II*, 74 F.3d at 674; 46 U.S.C. app. § 183(a).  In order to proceed with litigation, Foret would need to prove that Transocean was barred from any relief under Limitation

of Liability Act, which would require a finding that Transocean acted in privity or with knowledge with respect to the accident. *Id.* Foret correctly notes that an extensive amount of additional discovery would likely be necessary to prevail in this context. (*See* Rec. Doc. No. 47 at 4-5). Moreover, Foret's settlement prospects vary drastically depending on whether a limitation fund includes the value of the DCL or is confined the value of Lifeboat No. 4. *See Id.* For these reasons, summary adjudication of the flotilla doctrine's applicability for Transocean's limitation of liability defense is deeply relevant to the parties' subsequent discovery and ultimate attempts to settle.

Because the court is not precluded from determining the instant motion for summary judgment, it must subsequently decide, on the merits, whether the flotilla doctrine applies in this case for limitation purposes.

**B.  Applicability of the Flotilla Doctrine**

The flotilla doctrine applies in this case, because DCL and its lifeboats were owned by the same person, were engaged in a common venture at the time of the accident, and were under a single command. *See In the Matter of Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 726-27 (5th Cir. 1967). Because DCL and its lifeboats thus constitute a flotilla, and because the flotilla doctrine requires the inclusion of all vessels in a flotilla for limitation purposes, Transocean is not entitled

to a § 183 defense that limits liability to the value of Lifeboat No. 4.  *See Id.*

Courts in the Fifth Circuit determine whether vessels together constitute a flotilla by applying the "single venture" test.  *Id.* at 727; *Cenac*, 734 F.2d at 254.  The single venture test sets forth three requirements; for vessels to be considered a flotilla, they must: (1) be owned by the same person, (2) contractually engaged in a common enterprise and (3) under a single command.  *Cenac*, 734 F.2d at 254; *Tom-Mac*, 76 F.3d at 684; *Matter of Off-Shore Specialty*, 2002 WL 827398.

Within the Fifth Circuit, more than one court has declined to limit the meaning of the single command requirement to on-board direction – or essentially, steering – of the vessel.  *See Matter of Off-Shore Specialty*, 2002 WL 827398 (*citing Tom-Mac*, 76 F.3d at 680-81,684; *Matter of Falcon Workover Co., Inc.*, 1998 WL 760397).  These courts have instead concluded that it may be "proper to go over the head of the captain of an individual boat to determine whether a vessel's value may be included in a limitation fund." *See Id.*  Specifically, if two vessels share the same management personnel, this may satisfy the flotilla doctrine's single command requirement, even if the captains of each vessel are not the same person. *Matter of Falcon Workover Co., Inc.*, 1998 WL 760397).

Here, DCL and Lifeboat No. 4 meet all three requirements, and therefore constitute a flotilla.  First, Transocean owns both DCL

-18-

and its lifeboats, satisfying the element of common ownership. (Rec. Doc. No. 40-6 at 2-4). Secondly, because Lifeboat No. 4 is a required piece of DCL's equipment that serves no active, independent purpose outside its role as a mandatory appurtenance, the two vessels are necessarily engaged in "common venture." *See Matter of Off-Shore Specialty*, 2002 WL 827398; (Rec. Doc. No. 40-6 at 2-4). This conclusion is further bolstered by the reasoning employed by the Fifth Circuit in *Wirth Ltd. v. S/S Acadia Forest*, which observed that, because a barge was designed to be carried by the mother ship, it was no less a part of that ship's equipment than its boilers or engines. *Wirth Ltd. v. S/S Acadia Forest*, 537 F.2d 1272, 1278 (5th Cir. 1976). *Wirth* reasoned that the barge necessarily shared a common enterprise with the ocean liner, because it was part of the mother ship's equipment that significantly increased its utility. *Id.* at 1278. Similarly, because Lifeboat No. 4 is officially categorized as a piece of DCL's equipment that acts as a prerequisite to DCL's ability to conduct drilling operations, and because Lifeboat No. 4 is designed to be stowed and carried aboard the DCL barring an emergency evacuation, Lifeboat No. 4 shares in a common enterprise with DCL for purposes of the flotilla doctrine. *See Id.* Notably, Transocean does not dispute either the common ownership or common enterprise requirements of the flotilla doctrine. (*See* Rec. Docs. No. 42, 51).

Finally, Lifeboat No. 4 and DCL were under a single command. Although it is undisputed that Robert Laws was Lifeboat No. 4's designated coxswain, and consequently sat at the controls and engaged its release mechanism at the time of the accident, the Fifth Circuit does not require on-board direction to satisfy the single command requirement. *See Matter of Falcon Workover Co., Inc.*, 1998 WL 760397; *Matter of Off-Shore Specialty*, 2002 WL 827398; (Rec. Doc. Nos. 42-3 at 2-3, 42 at 3.) Rather, as argued by Foret, the role of DCL's OIM, John Redington, is adequate to establish the single command requirement in this case. *See* (Rec. Doc. No. 47 at 9). Foret alleges – and Transocean does not dispute – that as DCL's OIM, Redington was the senior position aboard the DCL charged with the command of the drill-ship. *Id.* As the manager of DCL offshore personnel, Redington exercised a degree of supervision and control over DCL, its equipment and subsequently, its work. *See Id.* Since Robert Laws works primarily onboard the DCL, he was ultimately responsible to Redington. (*See* Rec. Doc. No. 40-1 at 2,9). Because courts in the Fifth Circuit have found the single command requirement to be satisfied by senior management personnel who oversee the captains of particular vessels and supervise the work on the mother ship, Redington's role sufficiently aligns to this standard. *See Matter of Falcon Workover Co., Inc.*, 1998 WL 760397; *Matter of Off-Shore Specialty*, 2002 WL 827398; (Rec. Doc. No. 47 at 9).

Furthermore, Transocean's argument that that the single command requirement is not satisfied with respect to DCL and Lifeboat No. 4 in unavailing for two reasons. (*See* Rec. Doc. No. 51 at 5). First, the contention that "single command" requires direct control of the movement of both DCL and Lifeboat No. 4 goes against the prevailing federal jurisprudence on this issue. Specifically, Transocean relies on language set forth *In The Matter of Greenhill Petroleum Corp*, which interpret "single command" in the nautical sense. *In The Matter of Greenhill Petroleum Corp*, 1997 WL 567956. Transocean urges this interpretation despite that same court's later clarification of its ruling in *Matter of Off-Shore Specialty*, in which it explained that "single command" is not, in fact, limited to on-board direction, but may instead be established by common management personnel. *In the Matter of Off-Shore Specialty*, 2002 WL 827398 (*citing Matter of Falcon Workover Co., Inc.*, 1998 WL 760397). Although Transocean asserts that *The Matter of Off-Shore Specialty* was incorrectly decided, this argument ignores the fact that the same conclusion was reached by at least one other court in the Fifth Circuit. *See Matter of Falcon Workover Co., Inc.*, 1998 WL 760397. As a result, single command should not be limited to onboard direction. *See Id*.

Finally, Transocean alleges no disputed issue of fact with respect to the single command requirement. Transocean does not contest, or provide alternate evidence to counter, Foret's

-21-

allegations that John Redington served as the OIM of the DCL, or that Redington's responsibilities included the supervision, management and control of DCL's equipment, personnel and work. (*See* Rec. Doc. No. 51 at 5; Rec. Doc. No. 47 at 9). Transocean instead alleges that Redington did not have direct, onboard control of Lifeboat No. 4's movements at the time of the accident. (Rec. Doc. No. 51 at 5.)  This is not a disputed issue of fact, however, because Foret agrees that Laws was the designated onboard coxswain of Lifeboat No. 4 on June 16, 2009. (Rec. Doc. No. 51 at 5; Rec. Doc. No. 40-1 at 1.)  The single command requirement is nevertheless satisfied despite this fact.

In failing to raise an genuine issue of material fact, Transocean also fails to carry its burden. *See Id.* Because of this, the flotilla doctrine's applicability is an issue properly decided on summary judgment.  Furthermore, because all three requirements have been established, DCL and Lifeboat No. 4 together constitute a flotilla for limitation purposes.

<u>Conclusion:</u>

Courts in the Fifth Circuit enforce the flotilla doctrine, which requires the value of all vessels to be included in a limitation fund.  Because the flotilla doctrine applies to the DCL and its lifeboats, Transocean's claim of a § 183 Limitation of Liability defense that limits liability to the value of Lifeboat No. 4 is untenable.  As a result, Foret's Motion for Partial

Summary Judgment with respect to Transocean's Tenth Defense is **GRANTED**.

New Orleans, Louisiana, this 29th day of August, 2011.

UNITED STATES DISTRICT JUDGE